### PEOPLE ex rel. GARDINER v. GOFF.

(Supreme Court, Special Term, New York County. May 5, 1899.)

1. MANDAMUS—CONTROVERTING OPPOSING AFFIDAVITS—ALTERNATIVE WRIT.

Where an applicant for a peremptory writ of mandamus desires to controvert the statements made in an opposing affidavit, he should take out an alternative writ, so that the issues of fact can be tried.

2. SAME—EFFECT OF OPPOSING AFFIDAVITS.

Where, on a motion for a peremptory writ of mandamus, opposing affidavits are read, which conflict with the moving affidavits, it will be assumed that the facts stated in the former are true, in determining whether the applicant is entitled to the writ.

3. SAME—ISSUES OF FACT.

An application for peremptory writ of mandamus by a district attorney to require a court to admit him to the court room at all times will be denied where the opposing affidavit shows that the exclusion was while the court was charging the jury in a criminal case, which the assistant prosecuting attorney was conducting, and in which the district attorney had taken no part, at which time it was customary to deny all persons admittance, and justifies the exclusion as in aid of due administration of justice, but an alternative writ should issue for the trial of such issues of fact.

Application by the people, on relation of Asa Bird Gardiner, district attorney of the county of New York, against John W. Goff, recorder of the city of New York, presiding as judge of part 2 of the court of general sessions of the peace in the city and county of New York, for a peremptory writ of mandamus. Denied.

Asa Bird Gardiner, in pro. per.

Edward C. James and Abram I. Elkus, for respondent.

GIEGERICH, J. The relator seeks by a writ of peremptory mandamus to compel the respondent, as presiding judge in part 2 of the court of general sessions of the peace in and for the city and county of New York, to admit him to the said court at any time while it may be in session. The application is based upon the affidavit of the relator, wherein he alleges, in substance, that he is the district attorney in and for the county of New York; that the respondent is the recorder of the city of New York, and, as such, is presiding judge in the part of the court in question; that upon one occasion, while the said part was in session, and the trial of a person under indictment was proceeding, the relator was denied admittance thereto by a court attendant named Edwin R. Gibbons, who stated that he had been directed by the respondent not to let any one enter, as he (respondent) was about to charge, or was charging, a jury; that on the day following the one in question the respondent, in a personal interview had with the relator, declared that he would exclude the latter if he attempted to enter said court while he was charging a jury, or about to charge a jury, and would forthwith have him committed for contempt of court, and had given instructions to that effect to the court attendants; that there are four parts of said court of general sessions, together with the criminal branch of this court, in all of which trials of indictments are being had under the direction and supervision of the relator as such district attorney; that the nature of the public duties of the relator's said office is such "that he cannot remain continuously in one part of court, or in the criminal term of the supreme court, part 1, during the pending trials occurring therein, but that, in order to perform his duties to the people, and superintend the same, he must have free access at all times to the said courts when in session, and that he was entitled to have free access to part 2 of the court of general sessions of the peace in and for the city and county of New York during its public session" on the day in question; and that the relator cannot properly perform the duties of the office in question in connection with the trials and indictments pending in the first-mentioned court unless he is accorded free access thereto, which the relator claims has been denied, and threatened to be denied, to him, in the manner stated.

The affidavit of the respondent, among other things, shows that upon the trial referred to in the moving affidavit the people were represented by an assistant district attorney and a deputy assistant district attorney, and then proceeds to allege that:

"All the testimony was in on both sides. The counsel for the defendant and counsel for the people had respectively summed up the case, and the

judge presiding proceeded to charge in the usual order. Mr. Gardiner had not appeared in court during the trial of this case, nor had he taken any act or part in it, so far as the trial in open court was concerned, and deponent verily believes that he did not know what case was on trial. Deponent verily believes that his attempted entrance into the court room was in no way connected with the case on trial, and in which the court was then charging the jury, nor in the discharge of any public duty connected with said trial, and the grounds of deponent's belief are that Mr. Gardiner had taken no act or part in the trial of the case; that he had not appeared in court during the two days of trial of the case; that, to deponent's recollection, he has never tried a case, since he has been district attorney, before any court in which deponent has presided, and the assistant district attorney, who had tried the Robinson case, did not state to deponent that he desired the presence of Mr. Gardiner to assist him in the trial of said case, nor that Mr. Gardiner intended to be present in the trial of said case, or participate therein in any way, nor had Mr. Gardiner's name been ever mentioned in any manner, shape, or form in connection with said case. Deponent was wholly unaware of any attempt made by Mr. Gardiner to obtain entrance to the court while the court was delivering its charge to the jury until after the jury had retired, when his attention was called to the fact that Mr. Gardiner had caused the arrest of the court attendant who was in charge of the door of the court room for refusing him admission to the court room during its charge. With reference to the conversation referred to by Mr. Gardiner in his affidavit as having taken place between the deponent and Mr. Gardiner, a conversation did take place in deponent's chambers, at which in the early part there were present Judges McMahon, Newberger, and Blanchard of the general sessions, deponent, and Mr. Gardiner. Speaking of the reasonableness of the rule of closing the doors during the delivery of the charge by the court, some of the judges present expressed their surprise that any one would attempt to violate the rule, even on the grounds of courtesy; that even they, as judges, if visiting another branch of the court, always refrained from entering while the court was charging. Mr. Gardiner insisted that he had a constitutional right to enter the court at all times without regard to the particular time of charging the jury, and without regard to any regulation of the court, and that he wished he could have an opportunity to test that question. That he so thoroughly understood his constitutional rights that he had no doubt of his being right. Deponent suggested to him then that if there was no other question at issue but one of propriety and courtesy to the judge, that that alone should be sufficient to cause Mr. Gardiner to respect the rule; but that, if Mr. Gardiner was anxious to test the question as to his constitutional rights, that deponent would afford him an early opportunity to do so; and that, if he (Mr. Gardiner) attempted to enter the court room in the disorderly and boisterous manner which, as reported to deponent, he had sought to enter on the previous day, deponent would promptly commit him to jail for contempt, and that then he could raise his constitutional question directly. The first deponent heard, after that conversation, of Mr. Gardiner having taken proceedings to enforce what he called his constitutional rights, was when he was served with the order to show cause in this case, at half past 6 o'clock in the evening of the said date. Deponent is informed by the court attendant * * * that immediately before Mr. Gardiner sought to enter the court room of part 2 he had been present in part 3 of the same court, before Judge Newberger, and there had engaged in a wordy discussion with the judge presiding, relative to the question of calling the day's calendar. This discussion, and the general condition of affairs about the court at that time on the dispute existing between the judges and district attorney, caused a great deal of excitement and interest, and when Mr. Gardiner proceeded from Judge Newberger's court to part 2, where deponent was presiding, he was preceded by a policeman in uniform clearing a passage for him through the corridors, which were crowded with people, and a large number of persons following Mr. Gardiner sought also to obtain admission into the court; that the court attendant (Gibbons) in charge of the door politely told Mr. Gardiner that the court was charging the jury, and that it was the general orders that the outer door should be closed during the court's charge, and, upon his refusal to admit Mr. Gardiner, the latter im--

mediately ordered the policeman, who accompanies him as a guard around the court house, to arrest the court attendant, which was done, and, on the court attendant being taken from the door by the policeman, a rush was made by the waiting crowd to enter the court room, and this was only prevented by another court attendant, Thomas Shiels, interposing his person between the crowd and the door. All of this, as deponent has before stated, was unknown to deponent at the time of its occurrence. Deponent further says that he has never issued an order to exclude the district attorney, as such, from admission to the court room at any time, nor does he know of any such order having been issued, but that, in fact, the district attorney has had the most ample opportunities and accommodations for the conduct of his business in court which it is possible to furnish him with."

The remainder of the respondent's affidavit, as well as the other affidavits submitted upon his part, tend to show that for upwards of 20 years it has been a custom of the court of general sessions, and of the court of oyer and terminer of this county, and of its successor, the criminal branch of this court, to close the doors of the court room while a judge is charging the jury, and to keep them closed until the charge is concluded; that this is necessary for the orderly conduct of the proceedings of said courts and the due administration of justice therein; and that neither the propriety thereof nor the power of the court to make and enforce the same has ever been questioned by the predecessors of the relator in the office of district attorney, but have, on the contrary, always been respected by them. An affidavit made by court attendant Gibbons, read in opposition to the motion, likewise states that when the respondent began to charge the jury deponent was stationed at the outer doors of the court room, to prevent any person from entering during the continuance of said charge; and, as will be seen from the following excerpt, is corroborative of the respondent in many particulars:

"I was at the door during all of that day and the day previous, my duties being to regulate the attendance upon the court, see that the proper persons were admitted, etc. I had received no instructions from Recorder Goff at any time during that term to prevent the district attorney, or any other particular person, from entering the court room at any time. While the recorder was charging the jury in this case, the district attorney, Mr. Gardiner, appeared before the entrance to the court room. He was accompanied by a policeman named Palmer, and about ten reporters. I know Colonel Gardiner very well, and when I saw him coming towards the court room I realized that he wanted to enter. I was sitting down on a chair, and I got up, and said to him: 'Colonel, the judge is charging the jury, and you can't go in. Just as soon as he is finished charging the jury, you can go in.' Colonel Gardiner said, 'What, sir; I can't enter this court?' I said, 'No, sir.' He said, 'Do you know that I am the district attorney of this county?' I said, 'Yes.' He said, 'I must enter here,' and with that he started to go forward, and as he did I stepped right in front of the two doors, and placed my hand on his shoulder, with no intention of assault, but merely to prevent him from going in. Gardiner then turned to Policeman Palmer, and said, 'Officer, place this person under arrest.'"

The affiant, it appears, was arrested at the request of the relator, but was subsequently discharged by the respondent when apprised of the facts above narrated. Mr. Gibbons further says that he treated the relator politely and courteously, using towards him no violence whatever, and simply explaining to him that no one was allowed to enter the court room while the judge was char-

ging the jury; and that during the colloquy a large crowd of people congregated around them, there being at the time a great number of people in the corridors of the court-house building. Court attendant Shiels, who supplanted Gibbons as doorkeeper upon the latter's arrest, deposed that the relator, immediately before attempting to enter the court presided over by the respondent, had appeared in part 3 of said court of general sessions, with the presiding judge of which part he had some argument or controversy relating to the calling of the calendar, and that, as he walked towards part 2 of said court, he was followed by seven or eight persons and a policeman in uniform.

Upon the argument hereof the relator sought to present certain replying affidavits, to the filing or use of which the respondent objected. Decision was reserved, and the argument of the motion proceeded without waiver of such objection.

It is well settled that in determining whether an applicant is entitled to a peremptory writ of mandamus the court must disregard any averments contained in his papers which are denied in the opposing affidavit, and assume the facts set out in the latter to be true. People v. Brush, 146 N. Y. 60, 40 N. E. 502; People v. City of Brooklyn, 149 N. Y. 215, 43 N. E. 554; Haebler v. Produce Exchange, 149 N. Y. 414, 418, 44 N. E. 87; People v. New York Cent. & H. R. Ry. Co., 156 N. Y. 570, 571, 51 N. E. 312; 1 Fiero, Spec. Proc. (2d Ed.) p. 196, and cases cited. Moreover, Code Civ. Proc. § 2070, substantially provides that a peremptory writ can be issued in the first instance only where the applicant's right to it depends solely upon questions of law, and that, where any question of fact arises, a peremptory mandamus cannot issue until an alternative writ has been issued, served, and the return day has elapsed. Therefore, if the applicant desires to controvert or avoid the statements made in the opposing affidavit, he should take out an alternative writ, so that the questions of fact can be tried. People v. New York Law School, 68 Hun, 120, 22 N. Y. Supp. 663; 1 Fiero, Spec. Proc. (2d Ed.) p. 196. While the relator contends that every allegation of his affidavit has been admitted, yet an examination of the opposing affidavits discloses a denial of the allegation contained in the moving affidavit that the respondent had directed court attendants not to let the relator or any one enter the court while he was charging, or was about to charge, a jury. The relator, however, urges further that, notwithstanding the respondent's denial of having given such direction, the latter's failure to deny the interview as set forth in the relator's affidavit, to wit, that, if the relator attempted to enter the court while he was charging a jury, he would be excluded, tacitly admits the truth thereof. Even admitting the correctness of this contention, still, as the version of the interview given by the respondent conflicts with that contained in the moving affidavit, the statement so contained in the answering affidavits must, under the rule above stated, be regarded as true.

It is insisted by the relator that the custom set up by the respondent with respect to the closing of the door of the court room

while a judge is charging a jury is no answer to the application, in view of the provisions of section 5 of the Code of Civil Procedure, which prescribes:

"The sittings of every court within this state shall be public, and every citizen may freely attend the same, except that in all proceedings and trials in cases for divorce on account of adultery, seduction, abortion, rape, assault with intent to commit rape, criminal conversation, and bastardy, the court may, in its discretion, exclude therefrom all persons who are not directly interested therein, excepting jurors, witnesses and officers of the court."

He concedes, however, that the court is entitled to be advised as to whether there is any such custom or rule, even if it cannot affect the crucial question of exclusion. Under these circumstances, a determination of the controversy cannot properly be reached without an inquiry into the existence of such custom and its reasonableness, as well as the facts touching the threatened exclusion of the relator. So, too, while the allegations of the respondent to the effect that the actual exclusion was justified as in aid of the due administration of justice and the orderly conduct of the trial, would suffice to cause a denial of a peremptory writ, the joinder of issue as to these should, I think, be permitted. Under the rules governing applications of this character it is obvious that a peremptory writ should be refused, but I think, under the circumstances, an alternative writ should be granted. A writer of authority says that if, upon the case as presented, a fair, legal controversy is shown, which should not be disposed of summarily, but only after full hearing, the court will not grant the peremptory writ in the first instance, but only the alternative writ. High, Extr. Rem. § 547a. In People v. Rome, W. & O. R. Co., 103 N. Y. 95, 105, 8 N. E. 372, the court, speaking through Earl, J., said:

"Where the material allegations of the application for a writ are put in issue, or where the answering affidavits contain allegations showing that a peremptory writ ought not to be issued, the court should award an alternative mandamus in the first instance, in order that the issues of fact may be regularly tried before the proper tribunal."

An examination of the motion papers, as well as the skillfully prepared briefs submitted in behalf of both parties, satisfies me that the case presents questions of importance to the parties in interest and to the public, and that these cannot be properly disposed of until all the facts relative to the matter which I have noted shall fully appear. It is apparent that inquiry into these questions cannot be had upon the present application, in view of the rule that the statements contained in the opposing affidavits must be taken as true. It is otherwise in proceedings upon an alternative writ, where an issue of fact arises upon a denial contained in the return of a material allegation of the writ, or upon a material allegation of new matter contained in a return, unless a demurrer thereto is taken. Code Civ. Proc. § 2079. My conclusion therefore is that a peremptory writ of mandamus should be denied, and that an alternative writ should issue.